MERCHANT ONE, INC.,

      Plaintiff,

v.

TLO, INC., *doing business as* PAYMENTCLOUD,
SHAWN SILVER, JOHN DOES 1-10, and
ABC CORPORATIONS 1-10,

      Defendants.
_____/

## ORDER ON MOTION TO DISMISS

      **THIS CAUSE** is before the Court upon Defendants TLO, Inc. ("PaymentCloud") and Shawn Silver's ("Silver") (together, "Defendants") Motion to Dismiss, ECF No. [14] ("Motion"). Plaintiff Merchant One, Inc. ("Merchant One" or "Plaintiff") filed a Response, ECF No. [19] ("Response"), to which Defendants filed a Reply, ECF No. [25] ("Reply"). The Court has carefully considered the Motion, the Response and Reply, the record in this case and the applicable law, and is otherwise fully advised in the premises. For the reasons set forth below, the Motion is granted.[1]

## I.    BACKGROUND

      This case arises as a result of alleged breaches of a contract and related fraud perpetrated by Defendants. Merchant One is engaged in the business of providing credit card processing sales

---

[1] Plaintiff opines that the Motion serves no purpose other than to delay and inconvenience the Court and Plaintiff with unnecessary motion practice and to accrue unnecessary legal fees. Even so, the deadline for amendment to the pleadings in this case is February 17, 2020, and rather than engage Defendants in their delay tactics, Plaintiff was free to file an amended complaint without burdening itself, or the Court, with unnecessary motion practice. *See* Fed. R. Civ. P. 15(a)(1)(B) ("Amending as a Matter of Course. A party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b) . . . .").

and services to merchants across the United States. PaymentCloud is also engaged in the business of providing credit card processing sales and services. Silver is the owner and chief executive officer of PaymentCloud and maintains the daily corporate control of PaymentCloud. Silver was also the owner of National Bank Services, LLC ("NBS"), an entity he sold prior to forming PaymentCloud. In the Complaint, ECF No. [1], Merchant One alleges that it and PaymentCloud are independent sales organizations that have contracts with payment processors and vendors to provide sales and servicing to merchant accounts. In addition, both Merchant One and PaymentCloud have contracts with other independent sales organizations to access processing contracts with other industry members that focus on different market segments or which may have a favorable price structure.

On November 23, 2013, Merchant One entered a non-exclusive merchant referral agreement with NBS, ECF No. [1-1] ("Agreement"), pursuant to which Merchant One referred various merchant-clients to NBS in order to market merchant accounts considered higher risk. Merchant One's compensation for the accounts referred to NBS consisted of monthly residual income calculated as a percentage of monthly revenue to NBS from the referred merchant accounts. The Agreement provides the applicable terms for calculation and payment of Merchant One's compensation.

In 2015, Silver sold NBS. As part of the purchase, the purchaser iPayment, Inc. continued to be responsible for Merchant One's portion of the residual compensation on accounts previously referred to NBS. In addition, Merchant One continued an ongoing referral relationship with Silver. In or around February, 2016, Silver informed Merchant One that all new merchant accounts should be referred to PaymentCloud, which Merchant One did, even though Merchant One and PaymentCloud never entered into a new written contract. Instead, Merchant One alleges that it and

PaymentCloud agreed to abide by the same terms in the Agreement between Merchant One and NBS, with an agreed adjustment to commission percentages. PaymentCloud provided monthly residual reporting, identifying each referred merchant account, the agreed-to profit percentage and other payment information, some of which Merchant One now contends was falsified. Merchant One further alleges that PaymentCloud/Silver materially altered topline revenue and underpaid Merchant One based on the misrepresented amounts, improperly calculated Merchant One's referral fee based on understated merchant income, misreported expenses that also did not comply with the terms of the agreement between Merchant One and PaymentCloud, and deducted improper amounts from income earned from customers referred by Merchant One.

When Merchant One reported its discovery of what it contends are fraudulent underpayments to PaymentCloud in October, 2018, PaymentCloud stopped reporting and making residual payments, and continued to withhold residuals in breach of the parties' contractual relationship.

As a result of PaymentCloud's alleged actions, Merchant One asserts nine claims against Defendants for breach of contract (Count 1), breach of implied covenant of good faith and fair dealing (Count 2), fraud (Count 3), suppression and concealment (Count 4), conversion (Count 5), violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. 501.201, *et seq.* (Count 6), unjust enrichment (Count 7), conspiracy (Count 8), and detrimental reliance/promissory estoppel/quantum meruit (Count 9). In the Motion, Defendants seek dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.    LEGAL STANDARD

Rule 8 of the Federal Rules requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a

complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. These elements are required to survive a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which requests dismissal for failure to state a claim upon which relief can be granted.

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is

central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

## III.   DISCUSSION

### A.  Shotgun pleading

In the Motion, Defendants argue first that the Complaint is an impermissible shotgun pleading. Upon review, the Court agrees.

The Eleventh Circuit has repeatedly and unequivocally condemned shotgun pleadings as a waste of judicial resources. "Shotgun pleadings, whether filed by plaintiffs or defendants, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's para-judicial personnel and resources. Moreover, justice is delayed for the litigants who are 'standing in line,' waiting for their cases to be heard." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356-57 (11th Cir. 2018) (quoting *Cramer v. Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997)). Overall, shotgun pleadings fail to make the connection between "the substantive count and the factual predicates . . . [such that] courts cannot perform their gatekeeping function with regard to the averments of [the claim]." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279-80 (11th Cir. 2006).

Despite Plaintiff's contentions to the contrary, the Complaint here is a shotgun pleading that does not conform to federal pleading standards.

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and

immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (footnotes omitted). The Complaint in this case is noteworthy in that it qualifies under each of the four categories of shotgun pleading.

First, each of the nine counts asserted begins with the same sentence reincorporating all preceding allegations into each subsequent count. *See* ECF No. [1] ¶¶ 46, 52, 57, 63,69, 73, 77, 82, 88. Such reincorporation of all preceding counts is confusing, especially where Plaintiff attempts to plead certain claims in the alternative, such as breach of contract and unjust enrichment. Second, the Complaint contains numerous general allegations regarding the payment processing industry and Merchant One's efforts to cross-reference payments involving PaymentCloud in detail, which are not material to stating Merchant One's claims nor are they connected to any particular cause of action. Third, Count 9, in which Plaintiff purports to assert a cause of action for detrimental reliance/promissory estoppel/quantum meruit, lumps together distinct causes of action with different elements.[2] *See Morse, LLC v. United Wisc. Life Ins. Co.*, 356 F.Supp.2d 1296, 1300 (S.D. Fla. 2005) ("A cause of action for promissory estoppel contains three elements: that the plaintiff detrimentally relied on the defendant's promise, that the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance by the plaintiff, and

---

[2] The Court notes further that Plaintiff asserts a separate count for unjust enrichment, which would be duplicative of its claim based on quantum meruit.

that injustice can only be avoided by enforcement of the promise.") (citation omitted); *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) ("Florida law prescribes four elements for quantum meruit and unjust enrichment claims. First, the plaintiff must have conferred a benefit on the defendant. Second, the defendant must have knowledge of the benefit. Third, the defendant must have accepted or retained the benefit conferred. Fourth, the circumstances must be such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.") (internal citations and quotations omitted).[3] Fourth, all counts are asserted against both Defendants; however, other than the general allegation that Silver was acting in his individual capacity and as a representative of PaymentCloud, the Complaint contains no other allegations delineating each Defendant's alleged actions.

As such, despite Plaintiff's explanations to the contrary, the Complaint constitutes an impermissible shotgun pleading. Especially where a party is represented by counsel, it is not the Court's duty to expend precious time and resources in attempting to decipher a pleading that can be clarified by more conscientious drafting. The Complaint is therefore due to be dismissed upon this ground alone.

---

[3] Rule 10(b) states that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. [. . .] If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ." Fed. R. Civ. P. 10(b). Moreover, the failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading constitutes a "shotgun pleading" that violates Rule 8(a)(2). *Byrne v. Nezhat*, 261 F.3d 1075, 1129-30 (11th Cir. 2001).

### B. Remaining substantive arguments

Nevertheless, to the extent that Plaintiff's claims are discernible, Defendants have raised substantive challenges to the causes of action asserted. In the interests of efficiency and judicial economy, the Court will consider each argument in turn.[4]

#### i. Independent tort doctrine

Defendants argue that each of Plaintiff's tort claims is barred by the independent tort doctrine. In response, Plaintiff argues that Defendants' challenge is premature and requires the parties to engage in discovery to determine which alleged wrongs fall within the contract. The Court disagrees.

Florida's independent tort doctrine "bars a contracting party from recovery in tort where the act complained of relates to the performance of the contract." *De Sterling v. Bank of Am., N.A.*, No. 09-21490-CIV, 2009 WL 3756335, at *3 (S.D. Fla. Nov. 6, 2009). Although the Florida Supreme Court has limited the application of the economic loss rule to products liability cases, "[f]undamental contractual principles continue to bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations." *Freeman v. Sharpe Res. Corp.*, No. 6:12-cv-1584-Orl-22TBS, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (citing *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 407-09 (Fla. 2013)). "Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort." *Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 494 (Fla. 3d DCA 1994). However, the independent tort

---

[4] The Court notes with dismay that in response to Defendants' substantive arguments, Plaintiff does not provide a single citation to authority in support. *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019) ("Generally, a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him.") (internal quotations and citation omitted).

doctrine does not bar claims where the plaintiff alleges conduct independent from acts that breach the contract, and do not in and of themselves constitute a breach of the contract. *XP Glob. Inc. v. AVM, L.P.*, No. 16-cv-80905-BLOOM/Valle, 2016 WL 4987618, at *4 (S.D. Fla. Sept. 19, 2016).

Here, all of Plaintiff's claims appear to be premised upon the same core of allegations. Critically, Plaintiff alleges that Defendants were required to pay Plaintiff certain referral compensation in accordance with the terms of the Agreement, and that PaymentCloud made misrepresentations regarding merchant income, improperly calculated Merchant One's referral fee based on understated merchant income, misreported expenses, and improperly deducted from income earned from customers referred by Merchant One, contrary to the terms of the Agreement. As alleged, these core allegations constitute the basis for the breach of contract claim and the tort claims asserted by Merchant One. As such, the Complaint fails to set forth conduct independent from the acts that breached the agreement, and Plaintiff's tort claims would therefore be barred by the independent tort doctrine. *See Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017) ("It is well settled in Florida that, where alleged misrepresentations relate to matters already covered in a written contract, such representations are not actionable in fraud. It is similarly well settled that, for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentations must be independent, separate and distinct from the damages sustained from the contract's breach.") (internal citations omitted).

### ii.  Breach of contract

Defendants argue that Merchant One's breach of contract claim fails to state a claim because the Complaint falsely alleges the existence of an oral agreement, fails to allege sufficient facts to state a claim against Silver for an alleged breach by PaymentCloud, and is unclear as to

what damage allegedly occurred. In response, Plaintiff argues that Defendants' factual arguments are improper and that the claim is sufficiently alleged.

Defendants argues the falsity of Plaintiff's allegation that an oral contract exists. However, the Defendant's argument is improper. Upon a motion to dismiss under Rule 12(b)(6), the Court takes the allegations in the Complaint as true and construes them in the light most favorable to Plaintiff. Under Florida law, the elements of breach of contract are: (1) the existence of a contract, (2) a breach thereof, and (3) damages flowing from the breach. *Knowles v. C.I.T. Corp.*, 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977). Here, Plaintiff has alleged that the parties agreed to be bound by the terms in the Agreement, with a modification to the commission percentages, and that Defendants breached the Agreement by failing to pay Plaintiff the amounts due under the Agreement. This may or may not ultimately prove to be true, but the time to determine the truth of such allegations is not upon a motion to dismiss. Moreover, the damages incurred are not unclear—Plaintiff alleges that under the terms of the Agreement, it was due certain payments on referred accounts, which it did not receive because of Defendants' alleged misconduct.

Nevertheless, the Court agrees that the Complaint fails to allege sufficient facts to give rise to a plausible claim against Silver. "A general principle of corporate law is that a corporation is a separate legal entity, distinct from the persons comprising them." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008).

> It is black letter law in Florida that to disregard this corporate fiction and hold the corporation's owners liable—to 'pierce the corporate veil'—the [party] must prove that:
>
> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation;
> (2) the corporate form must have been used fraudulently or for an improper purpose; and

(3) the fraudulent or improper use of the corporate form caused
injury to the claimant.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (citing

*Gasparini*, 972 So. 2d at 1055) (emphasis removed); *see also Dania Jai-Alai Palace, Inc. v. Sykes*,

450 So. 2d 1114, 1120 (Fla. 1984) ("The corporate veil will not be penetrated either at law or in

equity unless it is shown that the corporation was organized or employed to mislead creditors or

to work a fraud upon them.") (citation omitted). Here, while Plaintiff neither confirms nor denies

that it attempts to allege a veil-piercing theory to reach Silver, the Complaint does not contain any

relevant factual allegations as to Silver from which the Court could draw a reasonable inference,

other than that he was acting both in his individual capacity and as a representative of

PaymentCloud. This allegation alone is insufficient.

### iii. Covenant of good faith and fair dealing

Defendants argue that the Complaint fails to state a claim for breach of the covenant of

good faith and fair dealing because it is redundant and identical to the breach of contract claim.

Under Florida law, every contract contains an implied covenant of good faith and fair

dealing which protects "the reasonable expectations of the contracting parties in light of their

express agreement." *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541,

548 (Fla. 2012) (quoting *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1438 (S.D. Fla. 1996));

*Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). The

covenant is implied as a gap-filling default rule where the terms of the contract vest a party with

substantial discretion, requiring that party to act in a commercially reasonable manner and limiting

its ability to act capriciously to contravene the reasonable expectations of the contract

counterparty. *See Karp v. Bank of Am., N.A.*, No. 8:12-cv-1700-T-17MAP, 2013 WL 1121256, at

*3 (M.D. Fla. Mar. 18, 2013); *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218,

1225 (S.D. Fla. 2013). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action but attaches to the performance of a specific contractual obligation." *Centurion*, 420 F.3d at 1151. The implied duty of good faith must, therefore, "relate to the performance of an express term of the contract . . . [and] cannot be used to vary the terms of an express contract." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999) (quoting *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998) and *City of Riviera Beach v. John's Towing*, 691 So. 2d 519, 521 (Fla. 4th DCA 1997)). Further, the covenant cannot "add an obligation to the contract which was not negotiated by the parties and not in the contract." *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. 4th DCA 1998). As such, "there are two limitations on such claims: (1) where application of the covenant would contravene the express terms of the agreement; and (2) where there is no accompanying action for breach of an express term of the agreement." *QBE*, 94 So. 3d at 548 (citing *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001)).

Here, to the extent that Merchant One asserts that Defendants' actions breached the duty of good faith and fair dealing, it must set forth the express terms of the Agreement to which it contends Defendants' breaches relate.

### iv. Fraud claims

As the Court has already determined, Plaintiff's fraud claims, as alleged, are barred by the independent tort doctrine. Defendants argue further that the claims fail because they are not stated with sufficient particularity, and that, in any event, there is no duty to disclose so as to support a concealment claim.

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied if the

complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of fraud.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

Here, while Plaintiff provides some examples of what it contends constitute fraudulent statements made by Defendants, the Complaint fails to satisfy the requirements of Rule 9(b) because Plaintiff must set forth precisely each statement alleged to be fraudulent. "The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (quoting *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988)) (internal quotations omitted).

Moreover, in order to state a claim for fraudulent concealment, a plaintiff must allege that:

> (1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known that the material fact should be disclosed; (3) the defendant knew the concealment of or failure to disclose would induce the plaintiff to act; (4) the defendant had a duty to disclose the material fact; and (5) there was detrimental reliance on the misinformation.

*Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013); *see Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 691 (Fla. 2015). "[A] duty to disclose arises 'when one party has information that the other party has the right to know because of the fiduciary or other relationship of trust or confidence between them.'" *Barnes*, 932 F. Supp. at 1429-30 (citing *State*

*v. Marks, P.A.*, 654 So. 2d 1184, 1189 (Fla. 4th DCA 1995), *reh. denied*, May 24, 1995). Generally, "in an arms-length transaction, however, there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered." *Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1319 (S.D. Fla. 2009) (citing *Watkins v. NCNB Nat'l Bank, N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993)); *see also Lanz v. Resolution Tr. Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991) (citing *Metcalf v. Leedy, Wheeler & Co.*, 191 So. 690 (1939)) (same).

Here, Plaintiff fails to allege facts sufficient to state a plausible relationship between it and Defendants that would give rise to a duty to disclose.

### v. Conversion[5]

Defendants argue that in addition to being barred by the independent tort doctrine, Plaintiff's claim for conversion fails because there is no identifiable fund that had to be separately held for Merchant One. In response, Plaintiff argues that its conversion claim relates to intentionally withheld payments in breach of the Agreement, and that are rightfully the property of Plaintiff.

Conversion is an "unauthorized act which deprives another of his property permanently or for an indefinite period of time." *Indus. Park Dev. Corp. v. Am. Express Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (S.D. Fla. 2013) (applying Florida law) (quoting *Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1291 (11th Cir. 2001)). To state such a claim, a party must allege facts showing an ownership of the property and facts that the other party wrongfully asserted dominion over it. *Id.* (citing *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011)). "It is well-established

---

[5] Within the count for conversion, Plaintiff alleges that Defendants committed "civil theft and conversion." ECF No. [1] ¶ 71. As the Court has already advised, separate causes of action should be set forth in separate counts. The Complaint does not contain sufficient allegations to state a claim for civil theft.

law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion." *Gasparini*, 972 So. 2d at 1055. "In order for money to be an appropriate subject for a conversion claim, there must be an obligation for the receiver to keep intact or deliver the specific money at issue." *Indus. Park Dev. Corp.*, 960 F. Supp. 2d at 1366 (internal citation omitted).

The Complaint fails to contain any allegations that Defendants were obligated to maintain the specific money it claims was due to it by virtue of the parties' Agreement. As a result, in addition to being barred by the independent tort doctrine, the Complaint fails to state a claim for conversion.

### vi. FDUTPA claim

Defendants challenge the sufficiency of Plaintiff's FDUTPA claim, arguing that Merchant One improperly demands damages not cognizable under FDUTPA. Plaintiff responds that the determination of proper damages is to made at trial and not upon a motion to dismiss. To the extent that the FDUTPA claim is confused by the shotgun nature of the Complaint, the Court invites Plaintiff to clarify the damages it is demanding, should it choose to reassert a FDUTPA claim in an amended pleading.

Defendants further argue that Merchant One is not a "consumer" under FDUTPA. "The FDUTPA is designed '[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Sols., Inc.*, 744 F. Supp.2d 1305, 1312 (S.D. Fla. 2010) (alteration in original; quoting Fla. Stat. § 501.202(2)). The statute defines a consumer as "an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate;

trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination." Fla. Stat. § 501.203(7). Accordingly, Defendants' argument on this point is not well-taken.

### vii. Unjust enrichment

Defendants argue that Merchant One's claim for unjust enrichment should be dismissed because the Complaint alleges the existence of a contract. However, as Plaintiff contends, an unjust enrichment claim may be pled in the alternative to a breach of contract claim. Nevertheless, where a complaint alleges an express agreement, and reincorporates those allegations, a claim for unjust enrichment has not been properly pled in the alternative. *Am. Marine Tech*, *Inc. v. World Grp. Yachting, Inc.*, ---F. Supp. 3d ----, 2019 WL 5103786, at *5 (S.D. Fla. Oct. 11, 2019); *see also In re Managed Care Litigation*, 185 F. Supp. 2d 1310, 1337 (S.D. Fla. 2002) ("An unjust enrichment claim can exist only if the subject matter of that claim is not covered by a valid and enforceable contract.").

### viii. Conspiracy claim

Defendants argue that Merchant One's conspiracy claim is barred by the intra-corporate conspiracy doctrine. In response, Plaintiff argues that Defendant's argument ignores the allegation that Silver was acting in his personal capacity.

To state a claim for civil conspiracy, there must be (1) an agreement between two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts performed pursuant to the conspiracy. *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006) (citation omitted); *see also Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008). Florida law does not recognize an independent cause of action

for civil conspiracy; rather, a valid claim must allege an underlying illegal act or tort on which the conspiracy is based. *See Carney v. IDI-DX, Inc.*, No. 2:12-cv-00449-FtM-29DNF, 2013 WL 4080326, at *3 (M.D. Fla. Aug. 13, 2013) (dismissing conspiracy claim for lack of a valid, separate underlying tort); *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997) ("[A]n actionable conspiracy requires an actionable underlying tort or wrong."); *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1541-42 (11th Cir. 1990) ("The basis for the conspiracy must be 'an independent wrong or tort which would constitute a cause of action if the wrong were done by one person.'") (quoting *Am. Diversified Ins. Servs. v. Union Fid. Life Ins. Co.*, 439 So.2d 904, 906 (Fla. 2d DCA 1983)); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014) (quoting *Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 561 F. App'x 882, 886 (11th Cir. 2014)) ("To plead civil conspiracy, a plaintiff must allege '(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy.'"). Under Florida law, "a conspiracy requires the combination of two or more persons—a meeting of two independent minds intent on one purpose." *Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So.2d 673, 676 (Fla. 1st DCA 1991)

"Just as it is not legally possible for an individual to conspire with himself, it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself." *McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir.2000) (citing *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 603 (5th Cir.1981)); *see also Denney v. City of Albany,* 247 F.3d 1172, 1190 (11th Cir.2001) ("[A]cts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy"); *Cedar Hills,* 575 So. 2d at 676 ("Since a corporation is a legal entity which can only act through

its agents, officers and employees, a corporation cannot conspire with its own agents unless the agent has a personal stake in the activities that are separate and distinct from the corporation's interest.") (citing *Am. Credit Card Tel. Co. v. National Pay Tel. Corp.,* 504 So.2d 486 (Fla. 1st DCA 1987) and *Garrido v. Burger King Corp.,* 558 So.2d 79 (Fla. 3rd DCA 1990)). This concept is referred to as the intracorporate conspiracy doctrine. "Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Denney,* 247 F.3d at 1190.

Here, Plaintiff's allegation that Silver was acting in his personal capacity does not save a potential civil conspiracy claim, as Plaintiff has not alleged a sufficient actionable underlying tort or wrong, nor are there allegations regarding who Silver conspired with, or what personal stake he possessed separate and distinct from PaymentCloud's interest.

### ix. Detrimental reliance/promissory estoppel/quantum meruit

Finally, Defendants argue that Count 9 asserting a claim for detrimental reliance/promissory estoppel/quantum meruit should be dismissed as it contains multiple claims in a single count. In response, Plaintiff contends that its claims are proper and discernible. As the Court has already noted, however, it is improper to assert multiple causes of action within a single count in a complaint. Thus, to the extent that they may be properly asserted in this case, Plaintiff should set forth each claim in a separate count.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, the Motion, **ECF No. [14]**, is **GRANTED**. The Complaint, ECF No. [1], is **DISMISSED WITHOUT PREJUDICE** as a shotgun pleading. To the extent that Plaintiff may in good faith, and in accordance with Rule 11 and federal pleading

standards, remedy the pleading deficiencies noted in this Order, Plaintiff may file an amended complaint, **on or before January 30, 2020**.

      **DONE AND ORDERED** in Chambers at Miami, Florida, on January 16, 2020.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record